# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| OFFICE DEPOT, LLC, | ) |
| *Plaintiff,* | ) CASE NO. _____ |
| v. | ) |
| | ) |
| ADOBE INC. | ) |
| *Defendant.* | ) |
| | ) |

## COMPLAINT

Plaintiff, Office Depot, LLC ("Office Depot"), by and through the undersigned counsel, hereby files its Complaint against Defendant, Adobe Inc. ("Adobe"), and alleges:

## PARTIES, JURISDICTION, AND VENUE

1. Office Depot is a Delaware limited liability company, organized under the laws of the State of Florida and with its principal place of business in Florida.

2. Upon information and belief, Adobe is a California corporation with its principal place of business located at 345 Park Avenue, San Jose, CA 95110.

3. This Court has subject matter jurisdiction over Office Depot's claims pursuant to 28 U.S.C. § 1332 because Office Depot is diverse in citizenship from Adobe and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Adobe is subject to personal jurisdiction in this judicial district, and because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## GENERAL BACKGROUND ALLEGATIONS

5. Beginning in or around October 2023, Office Depot partnered with Adobe to provide, among other things, services related to the transmission of Office Depot's marketing text messages to customers and prospective customers.

6. In October 2022, Adobe submitted a response to Office Depot's Request for Proposal (Adobe's "RFP Response") regarding Customer Data Platform solutions, in which Adobe made numerous representations regarding its capabilities in managing customer data (collectively, the "RFP Representations"). A true and correct copy of the RFP Response is attached hereto as **Exhibit 1**.

7. On or about November 7, 2022, Adobe provided Office Depot with a presentation titled *Adobe & Sinch Mobile CX* (the "Presentation"), in which Adobe made further representations regarding its capabilities in managing customer data. A true and correct copy of the Presentation is attached hereto as **Exhibit 2**.

8. Based on Adobe's representations in the RFP Response, the Presentation, and subsequent negotiations, Office Depot entered into an agreement with Adobe.

9. In furtherance of their partnership related to SMS and/or MMS message services, Adobe and Office Depot entered into several contracts and order, namely Adobe Sales Order No. 00914786 and Adobe Contract No. 00941422 (the "Order"). true and correct copy of the Order is attached hereto as **Exhibit 3**. The Order incorporates by reference Adobe Contract No. 00914786 (the "2023 Contract"), which in turn incorporates by reference Adobe Agreement No. 4400346827 (the "2013 Contract"). A true and correct copy of the 2023 Contract is attached hereto as **Exhibit 4**. A true and correct copy of the 2013 Contract is attached hereto as **Exhibit 5**. The

Order, the 2023 Contract, and the 2013 Contract are collectively referred to herein as the "Contract."

10. To further establish the responsibilities of Adobe to Office Depot, Adobe published its Opt-out management for text messages guide (the "Opt-Out Guide"). A true and correct copy of the Opt-Out Guide is attached hereto as **Exhibit 6**. The Opt-Out Guide informs Adobe Journey Optimizer users (including Office Depot) that "[n]o steps are required to ensure that SMS opt-out capabilities are working in Adobe Journey Optimizer as the keyword responses STOP, UNSTOP, START, QUIT, CANCEL, END, and UNSUBSCRIBE are automatically recognized." (Ex. 6, at 2).

11. Pursuant to the Contract, Office Depot transitioned from Salesforce to Adobe for its SMS/MMS services in or around January 2024.

12. When Office Depot initially transitioned to Adobe for its SMS/MMS services, Adobe informed Office Depot the only opt-out keywords that <u>Office Depot could control</u> within Adobe's system were "no" and "n" and that any additional terms were controlled by Adobe.

13. After Office Depot advised Adobe that these two keywords were insufficient, Adobe agreed to add Office Depot's requested additional opt-out keywords through the backend of its system, a process entirely within Adobe's control and to which Office Depot had no access or visibility.

14. Adobe completed the backend programming, and Office Depot was not informed of any issues with the system's performance or functionality regarding the added opt-out keywords and, to the best of Office Depot's knowledge, the system was functioning as intended and promised.

15. On or About April 18, 2024, Adobe issued an update to its system (the "Update").

3

16. The Update was intended to enable Office Depot and other Adobe Journey Optimizer users to add additional opt-out keywords, beyond the "no" or "n," without requiring Adobe to make backend programming changes.

17. Adobe failed to inform Office Depot that the Update would not only remove the opt-out keywords previously configured through backend programming, but would also delete the "no" and "n" opt-out keywords, indirect contradiction to the Opt-Out Guide.

18. Because Office Depot had no visibility into or control over the backend programming, it was unaware of the consequences of Adobe's Update until mid-June 2024.

19. Once Office Depot became aware of Adobe's programming error, it promptly submitted a support ticket to Adobe to have the issue resolved.

20. During this time, Adobe failed to deliver the services it had represented and guaranteed to Office Depot under the Contract and in the RFP Response, the Presentation, the Opt-Out Guide, and subsequent negotiations.

21. On July 26, 2024, Briana Glasel ("Glasel"), filed a complaint in the United States District Court Southern District of Florida West Palm Beach Division and subsequent amended complaint against Office Depot (the "Glasel Complaint"), alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). A true and correct copy of the Glasel Complaint is attached hereto as **Exhibit 7**.

22. Glasel alleges that on May 22, 2024, she requested that Office Depot stop contacting her by replying "Stop" to an automated promotional text message. (Glasel Complaint, ¶ 9). Glasel further claims that, despite this and multiple additional "Stop" replies, she continued to receive twenty-nine promotional text messages from Office Depot in May and June 2024. (*Id.* at ¶¶ 9-10).

23. Glasel alleges that Office Depot's failure to honor her opt-out requests constituted a violation of the TCPA. (*Id.* at ¶¶ 46-47).

24. On November 25, 2024, James Piet ("Piet"), filed a complaint in the United States District Court Southern District of Florida West Palm Beach Division against Office Depot (the "Piet Complaint"), alleging violations of the TCPA. A true and correct copy of the Piet Complaint is attached hereto as **Exhibit 8**.

25. Piet alleges that on September 18, 2024, he requested that Office Depot stop contacting him by replying "Stop" to an automated promotional text message. (Piet Complaint, ¶ 10). Piet further claims that, despite this and multiple additional "Stop" replies, he continued to receive promotional text messages from Office Depot in September and October 2024. (*Id.* at ¶¶ 10-16).

26. Piet alleges that Office Depot's failure to honor his opt-out requests constituted a violation of the TCPA. (*Id.* at ¶¶ 42-53).

27. Office Depot sent a correspondence dated June 17, 2025 to Adobe informing Adobe of the Glasel Complaint and Piet Complaint and demanding indemnification (the "Demand Letter"). A true and current copy of the Demand Letter is attached hereto as **Exhibit 9**.

28. Adobe failed to respond to the Demand Letter.

29. On January 2, 2026, Mariane Tomita ("Tomita"), filed a complaint in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida against Office Depot (the "Tomita Complaint"), alleging violations of the TCPA. A true and correct copy of the Tomita Complaint is attached hereto as **Exhibit 10**.

30. Tomita alleges that on March 4, 2025, she requested that Office Depot stop contacting her by replying "Stop" to an automated promotional text message. (Tomita Complaint,

¶ 12). Tomita further claims that, despite this and multiple additional "Stop" replies, she continued to receive promotional text messages from Office Depot in March and April 2025. (*Id.* at ¶¶ 12-13).

31. Tomita alleges that Office Depot's failure to honor her opt-out requests constituted a violation of the TCPA. (*Id.* at ¶¶ 39-54.)

32. The Glasel Complaint, Piet Complaint, and Tomita Complaint each allege constitute a failure of Adobe to provide the services promised to Office Depot.

33. All conditions precedent to the filing of this suit have been met or have been waived.

## COUNT ONE
## BREACH OF CONTRACT

34. Office Depot re-alleges and incorporates the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

35. This is an action for breach of contract against Adobe.

36. The Order, the 2023 Contract, and the 2013 Contract together constitute a valid, enforceable, and binding contract between Office Depot and Adobe.

37. Pursuant to the Contract, Adobe promised to provide adequate customer data services, including SMS/MMS services, to Office Depot.

38. At all relevant times preceding Adobe's material breach of the Contract, Office Depot performed its obligations under the Contract and all conditions precedent to instituting this action.

39. Adobe has breached its obligations under the Contract by failing to perform, failing to properly perform, and negligently performing its contractual obligations, as set forth above and as otherwise subsequently discovered. Specifically, Adobe materially breached the Contract from

6

April to June 2024, when it failed to provide the services it had promised to Office Depot under the Contract.

40. Adobe's breach of its contractual obligations has caused Plaintiff to suffer losses and damages in an amount to be determined at trial, including, but not limited to, fees, fines, costs, and expenses, including professional attorneys' fees.

**WHEREFORE**, Plaintiff, Office Depot, demands final judgment in its favor against Adobe for all damages resulting from Adobe's breach of contract, plus pre-judgment and post-judgment interest, compensatory damages, applicable interest charges, court costs, attorneys' fees, and any equitable and/or legal relief to which Office Depot may be entitled.

## COUNT TWO
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

41. Office Depot re-alleges and incorporates the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

42. This is an action for breach of the implied covenant of good faith and fair dealing against Adobe.

43. The Order, the 2023 Contract, and 2013 Contract together constitute a valid, enforceable, and binding contract between Office Depot and Adobe.

44. In every contract, New York law imposes an implied covenant of good faith and fair dealing on each party.[1]

45. The Contract required Adobe to provide Office Depot with adequate customer data services, including SMS/MMS services.

46. Adobe breached its duty of good faith and fair dealing by failing to provide adequate customer data services, including SMS/MMS services. Instead, Adobe allowed the

---

[1] The Contract is governed by New York law pursuant to a choice of law provision.

Update to compromise Office Depot's customer data system without Office Depot's knowledge, including allowing text messages to be sent to customers who had requested not to receive them. Thus, Adobe acted in an unreasonable, arbitrary, and irrational manner contravening the parties' contractual expectations.

47. Adobe's breach of its duty of good faith and fair dealing has deprived Office Depot of the Contract's benefits and has caused Office Depot to suffer losses and damages in an amount to be determined at trial, including, but not limited to, fees, fines, costs, and expenses, including professional and attorneys' fees.

**WHEREFORE**, Plaintiff, Office Depot, demands final judgment in its favor against Adobe for all damages resulting from Adobe's breach of the implied covenant of good faith and fair dealing, plus pre-judgment and post-judgment interest, compensatory damages, applicable interest charges, court costs, attorneys' fees, and any equitable and/or legal relief to which Office Depot may be entitled.

## COUNT THREE
## NEGLIGENT MISREPRESENTATION

48. Office Depot re-alleges and incorporates the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

49. This is an action for negligent misrepresentation against Adobe.

50. In its RFP Response, Adobe represented to Office Depot that it "is uniquely positioned to help brands gain consumer trust by protecting customer data and respecting data usage constrains, all while also enabling lines of business to deliver coherent, personalized experiences in real time." *See* Ex. 1 at 13.

51. In its RFP Response, Adobe represented to Office Depot that its "Experience Platform Data Governance service allows Office Depot to categorize customer data using labels

and create and enforce internal usage rules to ensure data is used according to usage constraints, such as consent, regulations, contracts, and internal policies." *See* Ex. 1 at 24.

52. In its RFP Response, Adobe represented to Office Depot that it would enable the creation of an "audit log" to "help with troubleshooting issues on [the] Platform, and help [its] business effectively comply with corporate data stewardship policies and regulatory requirements." *See* Ex. 1 at 38.

53. In its RFP Response, Adobe represented to Office Depot that it would create customer profiles that "allow[] users to consolidate disparate customer data into a unified view offering an actionable, **timestamped account of every customer interaction**." *See* Ex. 1 at 40 (emphasis added).

54. In its RFP Response, Adobe represented to Office Depot that "Adobe Real-Time CDP allows for maintenance of user preferences and consent data via opt-in object, designed to control data collection, segmentation and activation based on customer's consent." *See* Ex. 1 at 47.

55. In its RFP Response, Adobe represented to Office Depot that "Once Office Depot marketers have configured their CMP to listen for consent-change events on Office Depot website/mobile, Office Depot marketers can integrate the Real-Time CDP Web SDK / Mobile SDK to receive the updated consent settings and send them to Platform datasets on every page load and whenever consent-change events occurs." *See* Ex. 1 at 47.

56. In the Presentation, Adobe represented that it not only had experience with the TCPA but was a leader in the field, possessing "best practices for obtaining customer consent for recurring messaging … tactical recommendations for complaint opt-in mechanics … [and] opt-out and short code strategies." *See* Ex. 2 at 7.

57. In the Opt-Out Guide Adobe reinforced its promises and responsibilities by stating "[n]o steps are required to ensure that SMS opt-out capabilities are working in Adobe Journey Optimizer as the keyword responses STOP, UNSTOP, START, QUIT, CANCEL, END, and UNSUBSCRIBE are automatically recognized." (Opt-Out Guide, at 2). However, Adobe failed to recognize and honor the stop requests in the Glasel Complaint, Piet Complaint, and Tomita Complaint.

58. Adobe's statements in the RFP Representations, Presentation, Opt-Out Guide, and subsequent negotiations were false, as Adobe failed to provide adequate customer data services, resulting in Office Depot customers being unable to successfully opt out of promotional text messages.

59. Adobe's statements in the RFP Representations, Presentation, and subsequent negotiations were material. Office Depot would not have engaged Adobe to provide customer data services, including SMS/MMS services, had it known that Adobe was incapable of maintaining adequate customer data systems. Neither Office Depot nor any reasonable person would have entered into the Contract absent Adobe's misrepresentations.

60. When Adobe made the statements in the RFP Representations, Presentation, and subsequent negotiations, it knew or should have known that those statements were false. Adobe further knew or should have known that those statements would induce Office Depot to rely on Adobe's representations and enter into the Contract.

61. Office Depot reasonably and justifiably relied on Adobe's misrepresentations by entering into the Contract and relying on Adobe's purported expertise and ability to maintain adequate customer data services.

62. Adobe's negligent misrepresentations regarding the adequacy of its customer data services was the direct and proximate cause of Office Depot's losses and damages.

63. As a result of Office Depot's reliance on the misrepresentations made by Adobe, Office Depot suffered losses and damages in an amount to be determined at trial, including, but not limited to, fees, fines, costs, and expenses, including professional and attorneys' fees, as well as lost profits, revenues, reimbursements, and adverse impacts to Office Depot's brand, credibility, reputation, and business relationships with current and prospective customers.

**WHEREFORE**, Plaintiff, Office Depot, demands final judgment in its favor against Adobe for all damages resulting from Adobe's negligent misrepresentations, plus pre-judgment and post-judgment interest, compensatory damages, applicable interest charges, court costs, attorneys' fees, and any equitable and/or legal relief to which Office Depot may be entitled.

## COUNT FOUR
## COMMON LAW INDEMNIFICATION

64. Office Depot re-alleges and incorporates the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

65. This is an action for common law indemnification against Adobe.

66. The Contract between Office Depot and Adobe established a legal and special relationship between the parties that existed prior to any of the text messages alleged in Glasel's Amended Complaint.

67. This special relationship gives rise to a duty on Adobe's part to indemnify and hold harmless Office Depot for any damages that Office Depot may incur in connection with promotional text messages allegedly sent to Glasel, Piet, and Tomita after their alleged opt-outs.

68. Any liability that Office Depot may have to Glasel, Piet, and Tomita arising from the promotional text messages allegedly received after the opt-outs, which they claim violated the TCPA, is the direct and sole result of Adobe's acts or omissions.

69. Office Depot is entirely without fault for any damages Glasel, Piet, and Tomita allegedly sustained in connection with promotional text messages purportedly received after the opt-outs. Adobe was solely responsible for maintaining the integrity of the customer data systems, and its failure to do so caused any such messages to be sent after Glasel's, Piet's, and Tomita's alleged opt-out.

70. Any alleged unlawful text messages sent to Glasel, Piet, and Tomita were the direct and proximate result of Adobe's actions, omissions, and misconduct.

71. Should Glasel, Piet, and/or Tomita recover any damages, costs, or attorneys' fees from Office Depot in this action, any such liability would arise solely from Adobe's acts, omissions, and misconduct.

72. Accordingly, Adobe should indemnify Office Depot for all amounts for which Office Depot may be held liable to Glasel, Piet, and/or Tomita, including any damages, costs, attorneys' fees, or any other sums assessed against Office Depot. Adobe is further obligated to reimburse Office Depot for the costs and attorneys' fees it incurs in defending against Glasel's, Piet's, and Tomita's purported nationwide class actions, regardless of the outcome of this matter, as well as for those incurred in pursuing indemnification from Adobe under Florida common law indemnity principles.

**WHEREFORE**, Plaintiff, Office Depot, demands indemnification in its favor against Adobe in the event judgment is entered against Office Depot and in favor of Glasel, Piet, and/or Tomita in an amount to be determined at trial,  plus pre-judgment and post-judgment interest,

compensatory damages, applicable interest charges, court costs, attorneys' fees, and any equitable and/or legal relief to which Office Depot may be entitled.

## COUNT FIVE
## FRAUD IN THE INDUCEMENT

73. Office Depot re-alleges and incorporates the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

74. This is an action for fraud in the inducement against Adobe.

75. Adobe made numerous false statements of material fact in its RFP Response, Presentation, Opt-Out Guide, and subsequent negotiations with Office Depot. These representations included, but were not limited to, claims that Adobe possessed the expertise, systems, and safeguards necessary to manage customer data responsibly, ensure compliance with usage constraints such as consent, regulations, and internal policies, and maintain customer preference opt-out data through its Real-Time CDP platform.

76. At the time Adobe made these representations, it knew or should have known they were false. Adobe knew or should have known that its systems were not capable of maintaining adequate customer data integrity, properly handling opt-out requests, or ensuring compliance with applicable consent requirements.

77. Adobe made these false representations with the intent to induce Office Depot to rely on them and to enter into the Contract for Adobe's customer data and SMS/MMS services.

78. Office Depot reasonably and justifiably relied on Adobe's false statements by entering into the Contract and by transitioning its SMS/MMS operations from Salesforce to Adobe.

79. As a direct and proximate result of Adobe's fraudulent inducement, Office Depot suffered damages, including but not limited to fees, fines, costs, and expenses (including

professional and attorneys' fees), lost profits and revenues, and harm to its brand, credibility, reputation, and business relationships with current and prospective customers.

**WHEREFORE**, Plaintiff, Office Depot, demands final judgment in its favor against Adobe for all damages resulting from Adobe's fraud in the inducement, plus pre-judgment and post-judgment interest, compensatory damages, applicable interest charges, court costs, attorneys' fees, and any equitable and/or legal relief to which Office Depot may be entitled.

## COUNT SIX
## CONSTRUCTIVE FRAUD

80. Office Depot re-alleges and incorporates the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

81. This is an action for constructive fraud against Adobe.

82. A relationship of trust and confidence existed between Office Depot and Adobe arising from Adobe's superior knowledge, expertise, and control over the systems and processes governing Office Depot's SMS/MMS customer data management. Office Depot necessarily relied on Adobe's representations and technical expertise because Adobe possessed specialized knowledge and exclusive control over the configuration, functionality, and maintenance of the systems used to transmit marketing text messages and process opt-out requests.

83. Adobe abused this relationship of trust and confidence by taking unconscionable advantage of its position as the expert custodian of Office Depot's customer data systems. Specifically, Adobe (i) made material misrepresentations regarding its capabilities and system functionality; (ii) concealed material information about the Update that deleted existing opt-out keywords; and (iii) failed to disclose that Office Depot had no visibility into or control over the backend programming that governed compliance with customer opt-out requests.

84. Adobe's actions and omissions were deceptive and inequitable, resulting in an unconscionable advantage to Adobe and substantial harm to Office Depot.

85. As a direct and proximate result of Adobe's abuse of its position and its unconscionable conduct, Office Depot has suffered damages, including but not limited to fines, fees, costs, attorneys' fees, lost profits, reputational harm, and damage to its business relationships.

**WHEREFORE**, Plaintiff, Office Depot, demands final judgment in its favor against Adobe for all damages resulting from Adobe's constructive fraud, plus pre-judgment and post-judgment interest, compensatory damages, applicable interest charges, court costs, attorneys' fees, and any equitable and/or legal relief to which Office Depot may be entitled.

Dated: January 30, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
200 East Broward Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
*Counsel for Plaintiff, Office Depot, LLC*

By:   */s/ Eve A. Cann*
        Eve A. Cann
        Florida Bar No.: 40808
        ecann@bakerdonelson.com
        Rebecca N. Reynolds
        Florida Bar No.: 1048963
        rreynolds@bakerdonelson.com