**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| OFFICE DEPOT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 9:26-cv-80114-DMM |
| | ) | |
| | ) | |
| vs | ) | |
| ADOBE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ADOBE INC.'S MOTION TO PRECLUDE DAMAGES CONTENTIONS OR, IN THE ALTERNATIVE, COMPEL AND INCORPORATED MEMORANDUM OF LAW**

## I. INTRODUCTION

Adobe moves to preclude Office Depot from introducing evidence or argument concerning its newly disclosed claim for a refund of every invoice it has paid Adobe since 2024. Despite three Court orders, including a sanctions finding and discovery extensions, Office Depot continues to withhold the very information needed to test that claim. Under Rule 37, Office Depot should not be permitted to pursue a damages theory it has deliberately refused to support in discovery.

For over five months, Office Depot insisted that "this case involves simple damages in the form of attorneys' fees and costs incurred by Office Depot . . . in its defense of the three TCPA lawsuits" (Dkt. 52 at 8). Weeks before the original discovery deadline, it reversed course and demanded a full refund of every invoice it has paid since 2024 for Adobe's services that it used, without interruption, to send marketing messages to its customers. Yet Office Depot ***still*** refuses to produce information concerning the revenue those very messages generated. That information is squarely relevant to the apportionment and valuation of its damages claim and responsive to discovery Adobe served in May: Interrogatory No. 13 required Office Depot to identify all damages sought, "the amount sought," and "how the damages were calculated" (Ex. A at 12), and Request for Production No. 33 sought "damages calculations or models" and "documents reflecting claimed lost revenue." (Ex. B at 14.)

This Court has twice compelled Office Depot's complete responses to discovery, including Interrogatory No. 13 and Request No. 33, rejected Office Depot's prematurity objection, warned it not to "shirk" its discovery obligations, found its discovery obstruction "sanctionable," and sanctioned it. Dkts. 56 at 2, 72 at 2–4. The Court also extended Adobe's technical ***and*** damages expert deadline to September 10 and ordered Office Depot to produce the information in time for Adobe to meet its expert disclosure deadline. Dkts. 56 at 2, 72 at 4. Office Depot disregarded each one of those directives.

Instead, Office Depot waited until the night before the Court-ordered deadline, September 9, to serve supplemental interrogatory answers recasting its breach claim around Adobe's customer service rather than a purported failure of Adobe's platform. And, for the first time, Office Depot demanded a total refund of all the service fees it paid to Adobe since 2024. It produced only the invoices it paid and none of the information necessary to calculate a set-off or apportionment for the services Office Depot benefited from ***and*** services unrelated to opt-out functionality. Adobe served its technical expert report on September 10 under a full reservation

of rights, explaining in the Joint Report that Office Depot's night-before disclosures prevented Adobe's technical expert from properly assessing the new claim and entirely prevented Adobe from preparing a damages expert report. Dkt. 81.

Then, on September 24, Office Depot's Rule 30(b)(6) designee, Ranjith Chalasani, revealed what Office Depot had been sitting on all along. Testifying on topics concerning Office Depot's pled allegation that it "incurred and continues to incur damages," Dkt. 66-2 (Topics 46, 47, 56), Mr. Chalasani disclosed that Office Depot maintains "a directional attribution model" generating weekly, monthly, quarterly, and annual reports that "can tell us how much of revenue is being generated by SMS" messages that Office Depot sends through Adobe's AJO system. (Ex. C, Tr. 239:7–15, 241:13–243:16, 248:19-21.) Office Depot has never produced those reports, and its designee could not testify further about the model, its data, or its conclusions.

This Court has given Office Depot chance after chance to remedy the prejudice resulting from its last-minute disclosures. On September 24, the Magistrate Judge recommended extending discovery to November 30 so that Adobe could "conduct targeted discovery concerning Office Depot's September 9, 2026 supplemental disclosures including," among other things, Office Depot's "newly disclosed damages claim for amounts paid on Adobe invoices and the allocation of those payments to the services at issue." Dkt. 86 at 3. On October 1, the Court adopted that recommendation in full. Dkts. 92, 94. But Office Depot continues to frustrate Adobe's efforts to take that very discovery. Since the Court's October 1 Order, Office Depot has supplemented ***none*** of its discovery responses and has produced ***no*** information requested by Adobe, including flatly refusing to produce its revenue attribution reporting and data.[1] This is a deliberate choice to withhold highly pertinent damages evidence that has been in Office Depot's exclusive possession since the case began and has been the subject of multiple Court Orders.

With discovery closing in one month, any production now would come too late for Adobe to meaningfully assess it or prepare its damages expert report. Office Depot's willful non-compliance is neither substantially justified nor harmless: the information is in its exclusive control, Office Depot has offered no valid reason for withholding it, and Adobe cannot rebut the refund claim without it. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii), 37(c)(1). The Court has given Office

[1] After the deposition, Adobe asked Office Depot to confirm whether it would produce its revenue attribution information. (Ex. D.) Office Depot replied on October 6 and sought more time to respond. *Id.* On October 20, it stated that it would not produce it. *Id.* The parties conferred via telephone on October 26 and confirmed the impasse.

Depot three opportunities to comply,[2] and Office Depot has rejected each one. The Court need not tolerate—or subject Adobe to—Office Depot's gamesmanship any further. Office Depot should be precluded from seeking repayment of Adobe's invoices, and Adobe should be awarded its reasonable expenses, including attorneys' fees and costs. *Id.* at 37(a)(5)(A), 37(b)(2)(C).

## II. LEGAL STANDARD

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and a party must timely supplement incomplete responses to provide that discovery. Fed. R. Civ. P. 26(b)(1), 26(e)(1)(A). A party that fails to do so "***is not allowed to use that information*** [] unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). Late disclosure is not harmless, but is instead prejudicial, where it "deprives the opposing party of a meaningful opportunity to perform discovery." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015). And an organizational designee "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

Applying these rules, the Eleventh Circuit has affirmed exclusion of damages contentions where the claiming party "rebuffed [] interrogatories related to damages as 'premature,'" *Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3083273, at *3 (11th Cir. Aug. 3, 2022), and it has excluded breach and damages claims when a party has failed to properly disclose them in discovery, *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*, 595 F.3d 1203, 1211–13 (11th Cir. 2010).

## III. ARGUMENT

### A. Discovery Concerning Office Depot's Revenue Attribution Information Is Relevant, Responsive, and Proportional to Assess Its Damages Claim.

Office Depot has put the value of Adobe's services squarely at issue. It seeks a "full refund" of every invoice it paid since early 2024. (Ex. C, Tr. 236:25–237:7.) Yet throughout that period, Office Depot used Adobe's platform to message roughly 1.2 million customers, never stopped sending SMS messages despite submitting support tickets about problems with opt-out handling and the filing of the TCPA suits, and renewed the parties' contract in November 2025. (*Id.* 38:10–20, 242:17–244:7.) Office Depot's own conduct demonstrates that it benefited from

[2] *See* Adobe Motion to Extend Expert Disclosure Deadline, Dkt. 48, and Order, Dkt. 56; Adobe Motion to Compel, Dkt. 51, and Order, Dkt. 72; Magistrate's Report and Recommendation, Dkt. 86, and Order, Dkt. 92.

Adobe's services, and a party seeking a refund for services it used must account for the benefit it received; otherwise, the award is a prohibited windfall. *See Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 143 (2d Cir. 2016) ("[I]f any benefit or opportunity for benefit appears to have accrued to the plaintiff because of the breach, a balance must be struck between benefit and loss, and the defendant is only chargeable with the net loss" (internal quotation marks omitted)); *Summit Props. Int'l, LLC v. Ladies Pro. Golf Ass'n*, No. 07 CIV 10407 LBS, 2010 WL 4983179, at *4 (S.D.N.Y. Dec. 6, 2010) (holding first that plaintiff could not attempt to collect an unspecified higher amount in restitution damages than the amount it had specifically listed in its initial disclosures; then finding that those damages were completely offset by the amount of royalty payments that plaintiff disclosed it had made under the contract). As such, Adobe is entitled to seek information to assess the proper value of its services to Office Depot.

This information is also responsive to Interrogatory No. 13 and Request No. 33—both of which this Court has already ordered Office Depot to fully answer. Dkt. 72 at 4. These requests, served in May, sought "damages calculations or models" and "documents reflecting claimed lost revenue." (Ex. B at 14.). Yet Office Depot's September 9 supplemental response, despite a request for "damages calculations or models" and "documents reflecting claimed lost revenue," does not provide the requested revenue attribution. Office Depot's corporate designee testified the company's model generates this information, so Office Depot has elected to withheld it premised solely on a baseless relevance objection.[3] (Ex. C, Tr. 241:17–243:16.) But having been ordered by this Court to respond, Office Depot cannot withhold the plainly relevant and responsive revenue information simply because it undermines its overreaching damages claim.

**B. Office Depot's Rule 30(b)(6) Designee Was Unprepared to Testify About Revenue Data Office Depot Admits It Has.**

Several of Adobe's Rule 30(b)(6) topics covered the basis for Office Depot's damages claim, including, for instance, Topic 39: "basis for Office Depot's allegation and all facts" that it "has incurred and continues to incur damages." Dkt. 66-2 (*see also* Topics 46, 47, 56). Accordingly, Office Depot was obligated to prepare its designee on information "known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). It did not: Mr. Chalasani

[3] This is a longstanding issue pending since April, when Office Depot produced unusable search terms and hit reports. Adobe has repeatedly asked Office Depot to confer and/or reproduce its search reports, but it has refused. *See* Dkt. 51 at 3, 20. To date, Adobe still has no understanding of how Office Depot gathered and produced documents, including what information Office Depot has withheld from production.

claimed Office Depot "cannot really quantify the monetary benefit" of SMS/MMS messaging, while admitting that Office Depot's existing model already generates SMS/MMS revenue reports that "will show the attribution [of revenue] coming from SMS," but no one ran those reports to prepare him for the deposition. (Ex. C, Tr. 239:7–15, 241:2–243:16.) Office Depot cannot seek a full refund while claiming it cannot measure the services' value and then failing to properly prepare its corporate representative to testify on information known to it and responsive to Adobe's noticed topics.

### C. Office Depot Must Be Precluded From Presenting Its New Damages Theory.

When a party "fails to obey an order to provide or permit discovery," the court may issue "just orders," including an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). In *Whitesell Corp. v. Electrolux Home Prods., Inc.*, when the plaintiff was ordered to produce its product-level cost data, it failed to do so, and then revealed in depositions that its system tracked it, the Eleventh Circuit affirmed striking the plaintiff's lost profits claim, holding this was "an appropriate sanction given the nature of the violation-withholding the cost information." 154 F.4th 1289, 1297-99 (11th Cir. 2025); *see also Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 72–73 (2d Cir. 1988) (affirming preclusion of damages evidence where defendants defied order to produce information necessary to calculate damages). Here too, Office Depot must be precluded for its willful refusal, devoid of any legitimate basis and in contravention of this Court's orders, to produce relevant and responsive damages information.

## IV. CONCLUSION

Office Depot has squandered every opportunity this Court has given it. For these reasons, Adobe respectfully requests that the Court preclude Office Depot from seeking damages for the invoices Adobe issued for its services and award Adobe its reasonable expenses, including attorneys' fees and costs, under Rules 37(a)(5)(A) and 37(b)(2)(C).

Only in the alternative, if this Court elects to give Office Depot a fourth opportunity to comply, Adobe requests the Court order Office Depot to produce its attribution model, all data and information relating to it, a Rule 30(b)(6) deponent prepared to testify about how the model works, and reimbursement for Adobe's fees in briefing this motion, meeting and conferring on this issue, as well as Adobe's costs in re-deposing Office Depot's 30(b)(6) witness, preparing Adobe's damages expert's report, and defending the deposition of its damages expert.

Dated: October 29, 2026

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ H. Alan Rothenbuecher*
H. Alan Rothenbuecher (FL0846244)
Meggan A. Louden (*Admitted Pro Hac Vice)*
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: arothenbuecher@beneschlaw.com
mlouden@beneschlaw.com

Charanjit Brahma (*Admitted Pro Hac Vice)*
Puja V. Parikh (*Admitted Pro Hac Vice)*
Ruby H. Kazi (*Admitted Pro Hac Vice)*
Grace McElroy (*Admitted Pro Hac Vice)*
100 Pine Street, Ste. 3100
San Francisco, CA 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
Email: cbrahma@beneschlaw.com
pparikh@beneschlaw.com
rkazi@beneschlaw.com
gmcelroy@beneschlaw.com

*Attorneys for Defendant Adobe Inc.*

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3) of the Southern District of Florida, undersigned counsel for Defendant Adobe Inc. hereby certifies that counsel conferred in good faith with counsel for Plaintiff Office Depot, LLC via email exchanges on October 6, 2026 and October 22, 2026 and by video conference with Desislava K. Docheva of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC on October 26, 2026 in a good-faith effort to resolve the issues raised in this Motion without the necessity of Court intervention. Despite these extensive efforts, the parties were unable to resolve their disputes, and the parties are at an impasse, necessitating this Motion.

Dated: October 29, 2026

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ H. Alan Rothenbuecher*
H. Alan Rothenbuecher (FL0846244)
Meggan A. Louden (*Admitted Pro Hac Vice)*
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: arothenbuecher@beneschlaw.com
mlouden@beneschlaw.com

Charanjit Brahma (*Admitted Pro Hac Vice)*
Puja V. Parikh (*Admitted Pro Hac Vice)*
Ruby H. Kazi (*Admitted Pro Hac Vice)*
Grace McElroy (*Admitted Pro Hac Vice)*
100 Pine Street, Ste. 3100
San Francisco, CA 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
Email: cbrahma@beneschlaw.com
pparikh@beneschlaw.com
rkazi@beneschlaw.com
gmcelroy@beneschlaw.com

*Attorneys for Defendant Adobe Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2026 I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

*/s/ H. Alan Rothenbuecher*

H. Alan Rothenbuecher

*Attorney for Defendant*